## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| In re: | ) |
| | ) |
| RONALD LEE SMALLEY and | )   CASE NO. 20-32187 |
| ROXANN RAE SMALLEY | ) |
|           Debtors | ) |
| | ) |

| | |
|---|---|
| WESBANCO BANK, INC., | ) |
|           Plaintiff | ) |
| v | )   A. P. NO. 21-3011 |
| RONALD LEE SMALLEY and | ) |
| ROXANN RAE SMALLEY | ) |
|           Defendant | ) |

### MEMORANDUM

This case comes before the Court on the Motion for Summary Judgment filed by the Defendants, Ronald Lee Smalley and Roxann Rae Smalley (hereinafter "Defendants"). At issue is whether the debts owed by the Defendants to the Plaintiff, WesBanco Bank, Inc. ("WesBanco"), should be excepted from discharge under the provisions of 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6) and whether the Defendants should have their discharge denied under the provisions of 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(3). WesBanco opposes the Defendants' motion. Upon review of the motion, the response, and the exhibits attached thereto, the Court concludes that the Motion for Summary Judgment should be partially granted.

### JURISDICTION

The subject matter jurisdiction of bankruptcy courts is set forth in 28 U.S.C. § 1334(a). Bankruptcy courts have jurisdiction to hear all cases under title 11 of the United States Code (the Bankruptcy Code) and all claims arising thereunder. 28 U.S.C. §§ 157(b) and 1334. These "arising

under" claims are referred to as "core"proceedings and "either invoke[ ] a substantive right created

by federal bankruptcy law or ... could not exist outside of the bankruptcy." *Browning v. Levy*, 283

F.3d 761, 773 (6th Cir. 2002) (internal quotation marks and citations omitted).  Core proceedings

include matters concerning the administration of the bankruptcy estate, § 157(b)(2)(A), and actions

to determine the dischargeability of particular debts.  28 U.S.C. § 157(b)(2)(I).

### FACTUAL AND PROCEDURAL BACKGROUND

Ronald Smalley was the president and a director of DMX Enterprises Inc. ("DMX").

Roxann Smalley was the company's secretary and its only other director.  On November 15, 2016,

First Citizens Bank & Capital Trust Company[1] granted a loan to DMX in the amount of $489,063.47

(the "Loan") to refinance two of DMX's existing loans which were scheduled to mature in December

2016.  The Loan was secured, in part, by a mortgage on a building owned by DMX.  Defendants

personally guaranteed the Loan. Starting with one of the earlier loans, the Defendants completed and

signed personal financial statements. This continued each year thereafter until WesBanco called the

loan and commenced litigation to collect on the debt.  Additionally, DMX provided its tax returns

and financial statements to WesBanco each year from 2013-2019.

Shortly after the refinance in November 2016, WesBanco mistakenly released the mortgage.

This was done on WesBanco's initiative. The Defendants' received the released mortgage. The

Defendants believed that WesBanco had recorded another mortgage. In 2020, the Defendants

realized that WesBanco had not only released its mortgage but also failed to record a replacement

mortgage.

Eventually, the Defendants sold the DMX building. The proceeds from the sale of the DMX

---

[1] WesBanco is the successor-by-merger to First Citizens Bank & Capital Trust Company.

building ($586,756.00) were wired into the DMX account.  Between March 2, 2020, and September

1, 2020, Defendants spent approximately $329,256.00 of the funds.  How, and to what purpose these

funds were spent, is in dispute by the parties.  The Defendants assert they used the funds to pay the

creditors of DMX, while WesBanco alleges that the funds were used by the Defendants for personal

debts.  The Defendants retained the remaining $257,500.00 to be used to pay WesBanco.

On August 28, 2020, the Defendants filed for relief under Chapter 7 of the United States

Bankruptcy Code.  On February 23, 2021, WesBanco initiated this adversary proceeding seeking

a judgment finding the debts owed to it nondischargeable pursuant to §§523(a)(2)(A), (a)(4), and

(a)(6).  WesBanco also included counts in its complaint seeking to deny the Defendants their

discharge pursuant to §§727(a)(2)(A) and 727(a)(3)(A).

In Count I, WesBanco alleged that in order to induce First Citizens Bank to grant the Loan

to DMX, Defendants made false representations regarding the number of creditors to whom DMX

owed financial obligations.  WesBanco also alleged that the written statements in the personal

financial statements that Defendants provided to First Citizens Bank were materially false in that

they did not fully disclose the debts DMX owed to Defendants and that the written statements in the

DMX tax returns were materially false to the extent they did not fully disclose the debts DMX owed

to Defendants.   WesBanco alleged that First Citizens Bank reasonably relied upon the

representations and written statements Defendants in their personal financial statements and the

DMX tax returns in deciding to grant the Loan to DMX.  Finally, WesBanco alleged that the

Defendants made false statements, material misrepresentations and/or omissions in their personal

financial statements and the DMX tax returns with the intent to deceive First Citizens Bank and to

induce it to grant the Loan to DMX.  As such, WesBanco asks that these debts be excepted from

discharge under § 523(a)(2).

Count II alleged that, as directors and officers of DMX, Defendants owed the company a fiduciary duty. WesBanco further alleged that the Defendants breached the fiduciary duty they owed DMX by fraudulently diverting money from the proceeds of the sale of DMX's assets to their own personal use instead of using the funds to pay DMX's creditors. WesBanco also alleged defalcation, as well as embezzlement and/or larceny by fraudulently diverting money from the proceeds of the sale of DMX's assets to their own personal use instead of using the funds to pay DMX's creditors. Consequently, WesBanco asks that these debts be excepted from discharge under § 523(a)(4).

In Count III, WesBanco alleged that the debts should be excepted from discharge pursuant to § 523(a)(6). It alleges that the Defendants willfully and maliciously injured it by diverting the sales proceeds to their personal benefit. WesBanco alleged that as directors and officers of DMX, Defendants had a duty to use the proceeds of the sale of DMX's assets to pay the financial obligations DMX owed to its creditors. Instead of carrying out their duty to DMX, Defendants diverted the funds which should have been used to pay DMX's creditors to their own personal use.

With respect to the § 727 allegations, Count IV alleged that within one year before filing their petition in this matter, Defendants fraudulently transferred DMX's funds to themselves, their creditors, friends, neighbors, family members and other acquaintances which rightfully should have been used to pay DMX's debt to WesBanco. WesBanco asserts that the Defendants made these transfers with the intent to hinder, delay and defraud WesBanco. Consequently, WesBanco aks that the Defendants be denied their discharge pursuant to § 727(a)(2).

Finally, in Count V, WesBanco sought to deny the Defendants their discharge due to the Defendants' alleged failure to keep documents. WesBanco alleged that these records would have

allowed the Trustee and the Defendants creditors to ascertain the Defendants' financial condition

and business transactions.

As stated above, the Defendants have now moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by

Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that there
> is no genuine issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no

genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter

of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp.

v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets

that burden, the nonmoving party "must identify specific facts supported by affidavits, or by

depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for

trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In determining the existence or

nonexistence of a material fact, a court will view the evidence in a light most favorable to the

nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d

1466, 1472 (6th Cir. 1996). Absent such evidence from the nonmoving party in a motion for

summary judgment, the Court need not comb the entire record to determine if any of the available

evidence could be construed in such a light. *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)

(holding that the "trial court no longer has the duty to search the entire record to establish that it is

bereft of a genuine issue of material fact").

## DISCUSSION

To properly consider the motion, the Court will address each count separately.

**1.      Sections 523(a)(2)(A) and § 523(a)(2)(B)**

As stated above, Count I seeks to except these debts from discharge under § 523(a)(2).  The Defendants argue that in order to find the refinance was fraudulently induced, WesBanco must show fraud and new money advanced.  Defendants assert that WesBanco has shown neither new money advanced or pointed to any fraudulent statements made by the Defendants upon which it reasonably relied to its detriment.

The Sixth Circuit has held that to demonstrate nondischargeability under section 523(a)(2)(A), a creditor must prove four elements: (1) the debtor obtained money or property from or belonging to the creditor through false pretenses and/or material misrepresentations that at the time the debtor knew were false or that the debtor made with gross recklessness as to their truth or through actual fraud; (2) the debtor intended to deceive the creditor at the time the false pretenses, misrepresentations, or actual fraud occurred; (3) the creditor justifiably relied on the false pretenses, misrepresentation, or actual fraud; and (4) the creditor's reliance was the proximate cause of loss. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998); *see also Lansden v. Jones (In re Jones)*, 585 B.R. 465, 502 (Bankr. E.D. Tenn. 2018).

Moreover, the term "actual fraud" is broader than a misrepresentation and can encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Mellon Bank v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001) (*citing McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000)).  "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce

6

another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." *Id. (quoting Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)).

The Court cannot grant summary judgment on this count for a number of reasons. First, a dispersal of new funds is not required for nondischargeability under §523(a)(2)(B). The dispositive Sixth Circuit case on this issue is *In re Campbell*, 159 F.3d 963 (6th Cir. 1998). In that case, the court held that a contractual "refinancing" is sufficient to state a claim for nondischargeability under § 523(a)(2)(B) "without showing further damage." *Id* at 966. This holding has been followed by many bankruptcy courts within the Sixth Circuit who have interpreted *Campbell* to mean that, in a refinance context, new money is not a requirement for non-dischargeability under § 523(a)(2)(B). *See In re Ostosh*, 589 B.R. 319, 341 (Bankr. W.D. Mich. 2018) ("a creditor who extends, renews or refinances an existing obligation based on false written representations by a debtor may establish that the entire debt is nondischargeable, even if the creditor is unable to show that the refinancing or

forbearance resulted in additional damages.").

There is also questions of material fact as to whether the Defendants made material misrepresentations relating to the Loan, as well as to whether WesBanco relied upon those alleged misrepresentations when it decided to approve the Loan. Finally, and perhaps most importantly, there is a question of material fact as to whether the Defendants, if they did make material misrepresentations, made such misrepresentations with the appropriate intent. Looking at the facts and inferences in the light most favorable to the nonmoving party as it must, the Court concludes that summary judgment cannot be granted as to Count I.

2.        § 523(a)(4)

Turning to Count II, the Defendants argue that summary judgment should granted in their

favor because this count fails to state a claim.  Section 523(a)(4) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or
> 1328(b) of this title does not discharge an individual Defendant from
> any debt – (4) for fraud or defalcation while acting in a fiduciary
> capacity, embezzlement, or larceny;...

Section 523(a)(4), therefore, provides three categories of debts that are not dischargeable in

bankruptcy: first, debts arising from fraud or defalcation while acting in a fiduciary capacity; second,

debts from the commission of embezzlement; and third, debts from larceny.

The Defendants argue that, under controlling law, an action for defalcation while acting in

a fiduciary capacity cannot be maintained under this section in the absence of an actual express trust.

Since WesBanco alleged all three categories in its complaint, the Court will analyze each

ground separately.

Starting with  fraud or defalcation while acting in a fiduciary capacity, in the case of *In re*

*Garver*, 116 F.3d 176, 180, (6th Cir. 1997), the Sixth Circuit explicitly held that   defalcation

provision of § 523(a)(4) is limited to only those situations involving an express or technical trust

relationship arising from placement of a specific *res* in the hands of the debtor.   Defalcation then

occurs through the misappropriation or failure to properly account for those trust funds.

WesBanco counters that the trust was created by a state statute, KRS 378A.050(2).  It argues

that this statute created a trust sufficient to make § 523(a)(4) applicable.  WesBanco cites the  recent

case of *In re Bullitt Utilities, Inc.*, 614 B.R. 676, 681 (Bankr. W.D. Ky. 2020), wherein the

bankruptcy court held that "[o]nce insolvency occurs, the officers and directors no longer represent

the stockholders, but instead they become trustees for the creditors.").  Under Kentucky law, a

company is insolvent when the sum of its debts is greater than the sum of its assets. KRS 378A.020.

While the Court appreciates this novel argument, WesBanco appears to give the state statute more meat on the bone than is actually there. The statute referred to by WesBanco never uses the term trust. It never implies, infers, or otherwise indicates that the Kentucky Legislature ever intended that this statute created a trust. KRS 378A.050(2) simply provides that a "transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made, if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." KRS 378A.050(2).

Simply speaking, that statute cannot be read as far as WesBanco wishes. This statute did not create an express or technical trust between these parties. There was no express trust or technical trust between these parties. The Plaintiff did not place funds in the hands of the Defendants to be held on its behalf. While a statute could create an express or technical trust, the statute relied upon by WesBanco did not create such a trust. To read the statute as far as WesBanco suggests, would make every fraudulent transfer to an insider an express or technical trust situation. The Court cannot, and will not read the statute that far.

The remaining categories of nondischargeable debt under § 523(a)(4) are embezzlement and larceny. Federal common law defines embezzlement under § 523(a)(4), and requires two elements: (1) the debtor was lawfully entrusted with property, or property lawfully came into the hands of the debtor; and (2) the debtor fraudulently appropriated the property. *In re Grim*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003) (*citing In re Davis*, 262 B.R. 663, 671 (Bankr. E.D. Va. 2001)). Larceny, on the other hand, is defined by federal common law as the fraudulent and wrongful taking of the

property of another with intent to convert such property to the taker's use without the consent of the owner. *Grim* at 166 n. 3 (*citing In re Zanetti–Gierke*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997). Larceny differs from embezzlement in that, with embezzlement, the original taking of the property was lawful, whereas with larceny, "the felonious intent must have existed at the time of taking." *In re Burk*, 583 B.R. 655, 671 (Bankr. N.D. Miss. 2018) (*quoting Moore v. United States*, 160 U.S. 268, 270, 16 S.Ct. 294, 40 L.Ed. 422 (1895)).

Because a finding of larceny requires a taking of property that was unlawful when it occurred, the larceny provision of § 523(a)(4) does not apply here.  There are no allegations that the Defendants unlawfully took the Loan or unlawfully took the proceeds from the sale of the DMX building.  The initial "taking" of those funds by the Defendants was not unlawful, so larceny did not occur and that category of § 523(a)(4) is inapplicable.

That leaves only embezzlement as a potential category of nondischargeable debt under § 523(a)(4). To prove their embezzlement claim, WesBanco must show that the money loaned was "entrusted" to the Defendants. However, merely loaning or investing funds with a debtor is generally insufficient to establish that funds were "entrusted" to that debtor for the purposes of a § 523(a)(4) embezzlement claim. *See, e.g., In re Algire*, 430 B.R. 817, 822 (Bankr. S.D. Ohio 2010) (misuse of loaned funds did not support an embezzlement claim because "at the time Plaintiff funded the loan, loan proceeds ceased being Plaintiff's property; rather, at that moment, the loan proceeds became [the debtor's] property"); *In re Barbee*, 479 B.R. 193, 208 (Bankr. S.D. Ga. 2012); *In re Clayton*, 198 B.R. 878, 885 (Bankr. E.D. Penn. 1996) (denying a claim for embezzlement by a creditor of a closely held corporation based on allegations that the debtor had misused funds from the corporation).

The Court sees no reason why this analysis should not apply here, particularly when

WesBanco's claim for embezzlement suffers from a lack of specificity about how the Defendants'

conduct constituted embezzlement. As such, the Court finds that Summary judgment should be

granted to the Defendants on Count II on all the allegations based upon § 523(a)(4).

**3.       Section 523(a)(6)**

WesBanco also seeks to have the debts owed by the Defendants deemed nondischargeable

under § 523(a)(6). That section provides:

> (b) A discharge under section 727, 1141, 1228(a), 1228(b), or
> 1328(b) of this title does not discharge an individual Defendant from
> any debt – (6) for willful and malicious injury by the Defendant to
> another entity or to the property of another entity.

In the Sixth Circuit, "willful injury" and "malicious injury" are separate elements that must both be

met for the discharge exception to apply. *In re Berge*, 953 F.3d at 914 (6th Cir. 2020) (explicitly

adopting the two-pronged "willful" and "malicious" test in the Sixth Circuit). A "willful" injury

stems from conduct by which a defendant intended "the consequences of an act, not simply the act

itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

After the Supreme Court issued Geiger, the Sixth Circuit decided *Markowitz v. Campbell*

*(In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999), holding that a willful injury occurs when the

Defendant "desires to cause the consequences of his act, or ... believes that the consequences are

substantially certain to result from it." *Id.* As the Sixth Circuit Bankruptcy Appellate Panel has

explained,

> "this is a subjective standard... It does not matter if a reasonable,
> objective person would have been aware of the consequences of his
> or her action; if the Defendant did not subjectively intend those
> consequences or was not subjectively aware that the consequences
> were substantially certain to occur then the Defendant's action was

> not willful. The Defendant, however, need not intend or anticipate the precise nature of the injuries suffered, only that injury would ensue from his acts."

*In re Boland*, 596 B.R. 532, 545 (B.A.P. 6th Cir. 2019) (internal citations omitted).

The Defendants argue they should be granted summary judgment on this count as well. They argue that the acts alleged "do not rise to the level of the conduct proscribed by § 523 (a)(6). The debtors made no attempt to hide anything that they did. They maintained complete and thorough records."

The Court cannot grant the Defendants summary judgment on Count III. There are too many questions of material fact to dispose of this claim via summary judgment. Two main questions are left before the Court. As stated above, the Defendants contend that they used a portion of the funds to pay on DMX's debts, as they were required to do. Conversely, WesBanco argues that the Defendants used the funds to pay their personal expenses. This is a fact question. Moreover, the question of the Defendants intent is still unresolved. Defendants have offered no evidence showing that they did not intend to willfully and maliciously cause WesBanco harm. While it appears that the Defendants acted without an intent to harm WesBanco, this is a question of fact which precludes granting summary judgment.

**4. Section 727(a)(2)(A)**

As stated above, WesBanco argues that the Defendants should be denied their discharge pursuant to § 727(a)(2)(A). Section 727 reads, in pertinent part:

> (a) The court shall grant the debtor a discharge, unless—
> ....
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the

12

filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).  This section is to be liberally construed in favor of the debtor, and the

party objecting to discharge bears the burden of proof by a preponderance of the evidence. *Keeney*

*v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000).

The Defendants move for summary judgment on this claim arguing that the property alleged

transferred belonged to DMX, and, as such, was not "property of the debtor" as required by the

statute.

WesBanco in its response concedes that, as a general rule, property in which the debtor has

a derivative interest is not considered part of the bankruptcy estate for purposes of determining

dischargeability under Section 727(a)(2)(A).  *In re Steffner*, 479 B.R. 746, 761 (Bankr. E.D. Tenn.

2012).  WesBanco argues instead that the Court should treat DMX as the alter ego of the Defendants

and treat its assets as assets of the Defendants.

WesBanco is correct that courts can utilize an alter ego claim to find that debtors, through

the use of the corporate fiction, concealed or transferred property in violation of § 727(a)(2).  *In re*

*Adams*, 31 F.3d 389, 394 (6th Cir. 1994) ("the bankruptcy and district courts correctly characterized

the [corporate] accounts receivables as "property of the debtor," under Section 727(a), because [the

debtor] controlled [the corporation.]")

Under Kentucky law, a corporation is considered the alter ego of its shareholders when "(1)

domination of the corporation result[s] in a loss of corporate separateness and (2) . . . continued

recognition of the corporation would sanction fraud or promote injustice."  *Inter-Tel Techs., Inc. v.*

*Linn Station Properties, LLC*, 360 S.W.3d 152, 165 (Ky. 2012).

Nevertheless, the Court will grant summary judgment to the Defendants on this claim as

well.  In this Court's view, even looking at the facts and inferences in the light most favorable to

WesBanco, WesBanco has not presented sufficient evidence that the Defendants dominated DMX

to the degree that DMX lost its corporate separateness.  Moreover, the Court cannot find, under

these circumstances, that the continued recognition of DMX would "sanction fraud or promote

injustice." By all indications, the Defendants maintained corporate formalities, with possible *de*

*minimis* exceptions.  A review of all the documentation submitted, clearly indicates that the

Defendants recognized DMX as a separate legal entity, and acted accordingly.

Without the use of the alter ego theory, WesBanco cannot prove that the Defendants

transferred or hid estate property.  Consequently, summary judgment on this claim will be granted.

**5.      Section 727(a)(3)**

In its last count, WesBanco seeks to deny the Defendants their discharge for the alleged

failure to keep appropriate records of their finances.  Pointing to the thousands of pages of records,

the Defendants also move for summary judgment on this claim as well.   WesBanco counters that

the records provided by the Defendants are insufficient.  While the records reflect that numerous

transactions were made, WesBanco argues that records as to the details of the transactions was not

retained by the Defendants.

Section 727(a)(3) provides that the Court shall not grant a debtor a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to
> keep or preserve any recorded information, including books,
> documents, records, and papers, from which the debtor's financial
> condition or business transactions might be ascertained, unless such
> act or failure to act was justified under all of the circumstances of the
> case.

Courts applying § 727(a)(3) have uniformly held that it contemplates a burden-shifting framework.

*See, e.g., Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 829 (Bankr. N.D. Ohio 2004); *Turoczy*

*Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882–83 (6th Cir. BAP 1999). The party objecting to discharge must prove not only that the debtor has failed to keep records, but also that the missing records are of the kind required by § 727(a)(3), thereby imposing a materiality requirement on that party. Once, however, the plaintiff meets that burden, the burden shifts to the debtor to justify the lack of records. *In re Stiff*, 512 B.R. 893, 897 (Bankr. E.D. Ky. 2014).

This section "requires the debtor to provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.' " *Turoczy* at 882 (6th Cir.1999) (*quoting In re Martin*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)). "The adequacy of debtor's records must be determined on a case by case basis. *Id.*

In this case, the Court can find that, as a matter of law, the records produced by the Defendants are sufficient for the Chapter 7 Trustee, as well as their creditors, including WesBanco, to track their financial dealing with substantial completeness. The Court finds that the records provided are sufficiently complete and fully disclose the funds coming into their possession, as well as the disposition of the funds. Additionally, WesBanco has failed to show that any alleged missing records would be material to understanding the Defendants' financial status.

The Bankruptcy Code does not require an impeccable system of bookkeeping, but a debtor's financial records must "sufficiently identify the transactions [so] that intelligent inquiry can be made of them." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992). The records provided by the Defendants in this case clearly and sufficiently identify transactions so that an intelligent inquiry can be made. WesBanco may complain about who was paid and whether or not it was a legitimate expense but, based upon the records provided, it cannot complain about the Defendants' record

keeping. The Defendants have provided to WesBanco the complete banking records for the entire life of this enterprise.  Consequently, the Court will grant summary judgment on this claim as well.

## CONCLUSION

The Defendants have moved for summary judgment on all five counts in the complaint.  The Court will grant summary judgment to the Defendants as to Count II (§523(a)(4)), Count IV (§727(a)(2)), as well as Count V (§727(a)(3)).  Summary judgment cannot be granted with respect to Count I (§ 523(a)(2)) or Count III (§ 523(a)(6)).  A separate order will be entered in accordance with this Memorandum.

_____
Alan C. Stout
United States Bankruptcy Judge
Dated: November 3, 2021

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RONALD LEE SMALLEY and | ) | CASE NO. 20-32187 |
| ROXANN RAE SMALLEY | ) | |
|      Debtors | ) | |
| | ) | |

| | | |
|---|---|---|
| WESBANCO BANK, INC., | ) | |
|      Plaintiff | ) | |
| v | ) | A. P. NO. 21-3011 |
| RONALD LEE SMALLEY and | ) | |
| ROXANN RAE SMALLEY | ) | |
|      Defendant | ) | |

### ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED** that the Defendants' Motion for Summary Judgment is **PARTIALLY GRANTED**.  Defendants are granted summary judgment with respect to Count II (§523(a)(4)), Count IV (§727(a)(2)), as well as Count V (§727(a)(3)).

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment is **DENIED** with respect to be granted with respect to Counts I (§ 523(a)(2)) or Count III (§ 523(a)(6)).

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: November 3, 2021